A94A0298. GROVES v. CITY OF ATLANTA et al.
A94A0299. BROWN v. CITY OF ATLANTA et al.
A94A0300. RIDENHOUR v. CITY OF ATLANTA et al.
A94A0304. PYLANT v. CITY OF ATLANTA et al.
(444 SE2d 809)

SMITH, Judge.

These four appeals arise from separate actions filed by Barbara Groves, Mary Brown, Juanita Ridenhour, and Hugh Pylant against the City of Atlanta, John D. Stephens, Inc., and others, seeking injunctive relief and damages for trespass on their land. The trial court granted Stephens's motion for summary judgment; it also granted the City of Atlanta's motion for partial summary judgment as to two issues and its motion to dismiss the claim for punitive damages. The appeals have been consolidated for review.

The record reveals that the plaintiffs are all owners of parcels of vacant land in Forest Park, in Clayton County. For several years, the City of Atlanta ("the City") had been acquiring property in that area, known as the Ballard Road area, pursuant to its Noise Abatement Program. The City decided to use the parcels in the Ballard Road area as a "borrow site" for fill dirt to be used in constructing a new concourse at Atlanta's Hartsfield International Airport. It also contemplated preparation of the area for development, under a plan originated by the City of Forest Park, and sale to private developers.

The City sent letters to some, but not all, of the property owners in the area, offering to purchase their property. Groves and Pylant received such letters, but Brown and Ridenhour did not.

The City had contracted with Atlanta Airport Engineers ("AAE") to provide professional services regarding the development and construction of the airport. AAE was responsible for preparing site plans for grading and removing dirt from the "borrow site," as well as for providing field personnel to ensure compliance with the design and specifications in the contract. It is undisputed that responsibility for acquiring title to the properties in issue rested with the land acquisition office of the City's Aviation Department. None of the property owners accepted the City's offers to purchase their land, and the City never acquired their property. Nevertheless, the City awarded a contract to John D. Stephens, Inc. to clear the properties in issue, and on October 3, 1991, it issued a notice to Stephens to proceed with the project. Stephens then began clearing the lots.

The trial court granted Stephens's motion for summary judgment on the ground that it had performed all work pursuant to the instructions of the City as related to Stephens by AAE. Appellants' claim for punitive damages against the City was dismissed. Partial summary judgment was granted to the City on certain of appellants' claims, but the grant is not appealed. The City has not appealed the denial of that portion of its motion for summary judgment based on appellants' claims of nuisance and interference with right of access.

1. Appellants contend the trial court erred in granting Stephens's motion for summary judgment. They argue that, contrary to the trial court's assertion that "Stephens worked under the assumption that [the] City held title to the subject property," a question of fact exists whether Stephens performed its work despite having knowledge that the properties in issue were not owned by the City. In support of this argument, they point first to a note on the construction plan sheets stating that certain properties in the plan area remain "occupied" under private ownership and cautioning contractors not to enter these areas. It is clear, however, that appellants' parcels were not "occupied" but vacant and that the note refers to three specific properties — a church, a plumbing business, and a trailer park — that are clearly designated on the plans and marked with references to the marginal note.

Appellants also assert Stephens had actual notice of the trespass through direct contact with several property owners. Several property owners (other than appellants) may have told employees of Stephens the property was privately owned. However, Joseph Cantwell, project superintendent for Stephens testified at deposition that the contract documents themselves provided that all land was owned by the City. He testified further that on November 19, 1991, after the property

had been cleared and the crew was working on the second phase of Stephens's contract, constructing a retention pond on the property for purposes of erosion control, a man came to the site and told Cantwell he owned a portion of the land. Cantwell gave him the address and telephone number of AAE and the names of people to contact there; he asked the man to obtain clarification from them. Cantwell then discussed the problem with Frank Hayes, the chief resident engineer for AAE on the Ballard Road project. Hayes assured Cantwell the subject parcels had been the property of the Atlanta airport for many years.

Moreover, in an affidavit in support of Stephens's motion for summary judgment, Cantwell stated that Stephens was directed by the City, through its agent AAE, to clear the land in the Ballard Road project; that it had followed and not deviated from the plans, specifications, and directives provided by AAE; and that Stephens had done all work on the Ballard Road project in good faith reliance on the representations in the contract documents and by Hayes that the City had acquired the necessary properties. Hayes executed a similar affidavit in support of Stephens's motion for summary judgment, stating that the work done by Stephens was properly performed in accordance with the plans, specifications, and directives provided to them by the City and AAE. Hayes's affidavit also states that when Cantwell called and told him of the problem, Larry Stokes, Noise Abatement Director for the City, was also informed. According to Hayes, Stokes advised that the City had acquired the subject properties. Based on Stokes's statement, Hayes instructed Cantwell to continue work in the area.

The general rule is that a contractor engaged in a public works project is not liable for damage to private property resulting from the work performed, unless the damage results from the contractor's negligence or wilful tort. *C. W. Matthews &c. Co. v. Wells*, 147 Ga. App. 457, 458 (2) (249 SE2d 281) (1978); *Abercrombie v. Ledbetter-Johnson Co.*, 116 Ga. App. 376 (157 SE2d 493) (1967). If the contractor has followed the plans and directions of its employer, the employer, and not the contractor, must be held liable. *C. W. Matthews &c. Co. v. Marasco*, 184 Ga. App. 150, 151 (361 SE2d 34) (1987). Although an exception to the rule exists where the work is inherently dangerous, see id., that exception does not apply here.

*Martin v. City of Atlanta*, 155 Ga. App. 628 (271 SE2d 882) (1980), relied upon by appellants, is distinguishable on its facts. There, the contractor cleared privately owned land, and a question of fact existed whether the contractor had knowledge that the land needed no clearing. Id. at 630 (1), 631 (3). *Johnson v. Fowler Elec. Co.*, 157 Ga. App. 319, 323-324 (277 SE2d 312) (1981), cited by appellants, did not involve a public works project. Instead, it involved ap-

proval by government inspectors of privately contracted electrical work that was negligently performed but resulted in defects not visible or apparent upon inspection.

In this case, the evidence shows that as soon as the possibility of a trespass was raised, Stephens sought guidance from its superior, AAE, the City's agent, and was instructed to proceed because the City owned the property. Although it is clear a trespass took place, the evidence demanded the conclusion that Stephens was an innocent trespasser. *Wells*, supra at 458-459 (2). Even construing the evidence in the light most favorable to appellants, the trial court did not err in awarding summary judgment to Stephens.

2. Appellants contend the trial court erroneously granted the City's motion to dismiss their claim for punitive damages. Appellants direct their argument to the issue of sovereign immunity, asserting that a municipality's defense of immunity is waived to the extent of any applicable general liability coverage, and that the City is an insured under the policy of insurance carried by Stephens. However, sovereign immunity is not in issue. The Supreme Court has recently held that an award of punitive damages against a governmental entity is against public policy and is thus impermissible as a matter of law. *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869) (1991). *Boswell* was recently followed by this court in *Hosp. Auth. of Clarke County v. Martin*, 210 Ga. App. 893 (438 SE2d 103) (1993). The holdings in those cases control this case adversely to appellants, and therefore this enumeration is meritless.

*Judgment affirmed. Pope, C. J., and McMurray, P. J., concur.*

DECIDED MAY 2, 1994 —
RECONSIDERATION DENIED JUNE 7, 1994 — 

*Dwyer & White, J. Matthew Dwyer, Jr., Anne W. Sapp*, for appellants.

*Joe M. Harris, Jr., Charles G. Hicks, Long, Weinberg, Ansley & Wheeler, Joseph W. Watkins, Neal H. Howard, Michael V. Coleman*, for appellees.