A01A0232. NICHOLS et al. v. GEORGIA TELEVISION COMPANY.
(552 SE2d 550)

SMITH, Presiding Judge.

This case arises out of a search conducted by law enforcement personnel outside the home of appellants Randall and Kathy Nichols. Appellee Georgia Television Company d/b/a Channel 2-TV (Channel 2) was present during part of the search and televised videotaped portions of the search on its news show. The trial court granted summary judgment to Channel 2 in the trespass action subsequently filed by the Nicholses and also denied the Nicholses' motion to compel the production of alleged "raw" videotape footage. This appeal ensued. Although we find no error with regard to the trial court's denial of the motion to compel, we disagree with the trial court's conclusion that the trespass claim did not present an issue for jury determination. We therefore affirm in part and reverse in part.

In March 1997, a United States Magistrate issued a warrant authorizing the search of the Nicholses' property. The affidavit submitted in support of the application for the warrant recited that the affiant had reason to believe that Randall Nichols was operating "a clandestine lab" in his chicken house in which methamphetamine was manufactured and that the drug was sold from Randall Nichols's house.

The Forsyth County Sheriff's Department and other law enforcement agencies executed the warrant but found no evidence of a "clandestine drug lab" or drug paraphernalia, although they did find small amounts of suspected marijuana and methamphetamine. Randall and Kathy Nichols were arrested and charged with methamphetamine possession. Randall Nichols was also charged with marijuana possession. The methamphetamine charges were later dismissed, and a jury acquitted Randall Nichols of the marijuana charge.

While the search was being conducted, but after the Nicholses were arrested, Channel 2 and other media arrived at the scene of the search warrant execution. It appears to be undisputed that Channel 2 was invited to the scene by the Sheriff of Forsyth County, Denny Hendrix, as acknowledged by the Nicholses in a complaint filed by them in federal court. While on the property, Channel 2 videotaped the search of the exterior of the property and conducted interviews of certain individuals, including Sheriff Hendrix, as well as Junior Nichols, the father of Randall Nichols. With regard to the failure to find a clandestine lab, Sheriff Hendrix stated, "You know, you win some, lose some. Maybe we don't have the drug problem we thought up here; we hope not." Channel 2 aired three broadcasts in which it reported on the execution of the search warrants.

Randall and Kathy Nichols then filed a complaint in federal district court in which they sought to hold Sheriff Hendrix, Channel 2,

and other law enforcement and media defendants liable for violation of their civil rights under 42 USC § 1983 and for malicious prosecution, false arrest, defamation, and trespass. The district court dismissed the § 1983 claims against the media defendants and declined to exercise jurisdiction over the remaining state law claims.

After the dismissal of their claims against the media defendants in federal court, the Nicholses filed a "complaint for trespass" against Channel 2. The trial court granted summary judgment to Channel 2. Randall and Kathy Nichols appeal from this ruling as well as the trial court's order denying their motion to compel.

1. We first address the Nicholses' contention that summary judgment was improperly granted to Channel 2 on their trespass claim. In deciding this issue, we must be guided by the basic principle that summary judgment is warranted in cases only when the evidence, or the inference to be drawn from the evidence, plainly shows that a party is entitled to judgment as a matter of law. See generally *Lynch v. Waters*, 256 Ga. 389, 390-391 (349 SE2d 456) (1986); *Marsden v. Southeastern Sash &c. Co.*, 193 Ga. App. 597, 599 (2) (388 SE2d 730) (1989) (full concurrence as to Division 2).

In this State, all citizens enjoy an absolute right of enjoyment of their property, and "every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." OCGA § 51-9-1. Channel 2 argues that its actions were lawful. It maintains that because the Sheriff invited the television crew to the scene of the search, its entry onto the property and filming of the search constituted an "innocent trespass." Georgia law indeed recognizes the doctrine of the innocent trespasser, which protects individuals who enter the land of another under the mistaken belief that it is permissible to do so. See, e.g., *Klingshirn v. McNeal*, 239 Ga. App. 112 (520 SE2d 761) (1999); *Young v. Faulkner*, 228 Ga. App. 587, 588 (492 SE2d 331) (1997). But "whether the trespass was wilfully or innocently done is generally for the jury to determine." (Citations and punctuation omitted.) Id.

Here, the Sheriff had the legal right to enter the Nicholses' property to execute the warrant issued by the federal magistrate. While Channel 2 argues that it believed the Sheriff had the authority to invite its news crew onto the property, the reasonableness of this belief is not so plainly clear that it can be adjudicated on motion for summary judgment. The trial court therefore erred in granting Channel 2's motion.

We note Channel 2's contention that it was never asked to leave the property. But the Nicholses had been taken to jail when the crew arrived. Their failure to ask the crew to leave is therefore irrelevant. And while Randall Nichols's father granted an interview and did not ask Channel 2 to leave the property, these facts are not controlling in

the absence of evidence that Channel 2 reasonably believed the father had a possessory interest in the property. This case is distinguished from *Groves v. City of Atlanta*, 213 Ga. App. 455 (444 SE2d 809) (1994), cited by Channel 2. In *Groves*, we affirmed the grant of summary judgment to a contractor who cleared certain lots owned by several individuals. But in that case, the contractor acted at the direction of the city and under the mistaken belief that property was owned by the city. Nothing in this record suggests that Channel 2 believed the property on which it trespassed was owned by anyone other than Randall and Kathy Nichols.

In addition, we address here Channel 2's contention that this action is an improper attempt "to transform a time-barred publication tort claim into a trespass claim." We are not persuaded by this characterization of the Nicholses' action.

A complaint for libel may indeed have been barred by the applicable statute of limitation, but this does not change the fact that the Nicholses have at least alleged and presented some evidence of a trespass — an unlawful entry onto their property. Also, we have held that a tort against property may support a claim for wounded feelings if a defendant has acted in a wilful manner. See *Brunswick Gas &c. Co. v. Parrish*, 179 Ga. App. 495, 497 (3) (347 SE2d 240) (1986). The test for awarding damages for a claim such as this is essentially the same as the test for recovery of punitive damages. *Westview Cemetery v. Blanchard*, 234 Ga. 540, 545 (B) (216 SE2d 776) (1975). The plaintiff must prove that the defendant acted under circumstances that show "an entire want of care and a conscious indifference to the consequences." (Citations and punctuation omitted.) *Artzner v. A & A Exterminators*, 242 Ga. App. 766, 772 (3) (531 SE2d 200) (2000). If a jury believed that Channel 2 was not authorized to enter the Nicholses' property, it might also conclude that Channel 2 acted with a conscious indifference to the consequences of its trespass. Finally, we note that Channel 2 cites cases from foreign jurisdictions in support of its contention that this case represents an improper attempt to recover damages for publication tort claims. These cases, of course, are not binding on this court. While Channel 2 additionally relies on a United States Supreme Court case for this proposition, *Hustler Magazine v. Falwell*, 485 U. S. 46 (108 SC 876, 99 LE2d 41) (1988), the facts of *Hustler Magazine* are clearly distinguished from those here and have no bearing on our analysis.[1]

---

[1] That case does not address the issue of whether damages can be recovered for wounded feelings arising out of a trespass to property but instead discusses whether a public figure can recover damages for emotional harm caused by the publication of an ad parody offensive to him and others. Id. at 880. The Supreme Court's discussion extensively focuses on the importance of public debate and opinions concerning public figures. The Court held in

2. We find no merit in the Nicholses' argument that the trial court erred in denying their motion to compel "raw" video footage taken by Channel 2. During discovery, the Nicholses sought "[c]opies of all . . . video tapes taken by Defendant's agents concerning the raid." Channel 2 responded, stating that there were "no documents responsive to this request, except for the videotape of the WSB-TV broadcasts." Channel 2 also noted in the response that it had previously agreed to make the videotape available to the Nicholses and their counsel for viewing at any reasonable time and continued to extend this offer. The Nicholses filed a motion to compel, alleging that Channel 2 had failed to produce the film requested by them. The trial court concluded that no foundation existed for the motion. We agree.

Channel 2 responded to the discovery request by stating that the only videotape in its possession was a copy of the broadcasts and gave the Nicholses the opportunity to purchase a copy or to visit its studio and view the videotape. Through a letter to the Nicholses' attorney from its attorney, Channel 2 offered to provide copies of the broadcasts to the Nicholses for its standard fee for producing copies of its broadcasts of $100 for each broadcast day. Because the broadcasts spanned two days, the charge was $200. The Nicholses failed to take advantage of any of these offers. Notably, as stated by the trial court in its order denying the motion to compel, it appears that the Nicholses did not even "make the effort to view the tape filed with the Court" with Channel 2's summary judgment motion. Trial courts enjoy a broad discretion in dealing with matters of discovery. See, e.g., *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 594 (7) (533 SE2d 136) (2000). The Nicholses and their attorney had ample opportunity to view the video footage that Channel 2 had in its possession and failed to do so. The trial court did not abuse its discretion in denying their motion to compel and for sanctions.

*Judgment affirmed in part and reversed in part. Barnes and Phipps, JJ., concur.*

DECIDED JULY 16, 2001 —
RECONSIDERATION DENIED JULY 30, 2001 — ▮▮▮▮▮▮

*Clifford H. Hardwick*, for appellants.

---

that case that public figures cannot recover for intentional infliction of emotional distress in circumstances such as those presented there unless the publication contains a false statement of fact understood as such and made with actual malice. Id. at 882.

*Dow, Lohnes & Albertson, Peter C. Canfield, Sean R. Smith*, for appellee.